**KUZYK LAW, LLP**
Michael D. Braun (SBN 167416)
2121 Avenue of the Stars, Ste. 800
Los Angeles, California 90067
Telephone:    (213) 401-4100
Facsimile:    (213) 401-0311
Email:    mdb@kuzykclassactions.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| **DAVID FRANKLE on behalf of himself and all others similarly situated,**<br><br>**Plaintiff,**<br>**v.**<br><br>**PERFECTFIT365**<br><br>**Defendant** | **CASE NO.: 25-cv-5286**<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF** |

Plaintiff David Frankle ("Plaintiff"), on behalf of himself and all others similarly situated, brings this class action against PerfectFit365 ("PerfectFit" or "Defendant"), and on the basis of personal knowledge, information and belief, and the investigation of counsel, alleges as follows:

## INTRODUCTION

1.      This is a proposed class action on behalf of a nationwide and California class (collectively, "Class") of consumers seeking redress for Defendant's deceptive practices associated with the advertising, labeling, and sale of its PerfectFit365's Creatine Monohydrate Gummies ("Supplement," "Product," or "Gummies").

2.      Creatine is a naturally occurring compound found in small amounts in certain foods such as red meat and fish and is also produced in small amounts by the liver, kidneys, and pancreas. It plays a key role in energy production, especially during short bursts of intense physical activity. As the body and diet can only provide limited amounts of creatine, supplementation has become commonplace. As a dietary supplement, creatine has been widely studied. In addition to athletic benefits, creatine supplements have been used to address symptoms of neurodegenerative diseases, diabetes, osteoarthritis, fibromyalgia as well as an array of metabolic issues. The global market for creatine supplements is in excess of one billion dollars and continues to grow, making it a very attractive marketplace for supplement manufacturers.

3.      "The marketing industry is based on the premise that labels matter—that consumers will choose one product over another similar product based on its label and various tangible and intangible qualities they may come to associate with a particular source…. [C]onsumers rely on the accuracy of those representations in making their buying decisions."[1]

4.      While this axiomatic proposition holds true with respect to all consumer goods, it is even more pertinent when it comes to consumer goods that are directly related to a consumer's

---

[1] *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 328 (2011).

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

health and wellness, as is the case with dietary supplements. Its importance is even more consequential when, as is the case here, consumers possess neither the scientific knowledge, nor the independent ability to verify the contents of a dietary supplement prior to its purchase but instead are reliant entirely on the honesty and integrity of the manufacturers and sellers of the product.

5.    PerfectFit markets, advertises, and sells a line of Creatine Monohydrate Gummies. The Product's principal display panel unequivocally identifies the Product as Creatine Monohydrate.



6.    The Supplement Fact Panel states that the Product's contains 5,000 mg of Creatine Monohydrate.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18



19      7.      Plaintiff conducted analytical testing on 12 representative units of PerfectFit's

20   Gummies which reveal that, despite the label claims, the Products contain no detectable amounts of

21   Creatine Monohydrate whatsoever. In short, the Product is an outright fraud.

22      8.      PerfectFit's failure to provide the promised amount of Creatine Monohydrate makes

23   its label false, misleading, deceptive and unlawful and further renders the Product entirely worthless.

24

25      9.      Throughout the applicable Class Period, Defendant has falsely represented the true

26   nature of its Product. As a result of this false and misleading labeling, Defendant was able to sell

27   them to thousands of unsuspecting consumers throughout California and the United States.

28

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

10.    Plaintiff alleges that Defendant's conduct is in breach of express warranty, violates California's Business and Professions Code § 17200, et. seq., California's Business & Professions Code § l7500, et. seq., California Civil Code § 1750, et seq., and is otherwise grounds for restitution on the basis of quasi-contract/unjust enrichment.

## JURISDICTION AND VENUE

11.    Jurisdiction of this Court is proper under 28 U.S.C. § 1332(d)(2). Diversity jurisdiction exists as Plaintiff Frankle is a California resident located in Oakland California. Defendant PerfectFit maintains its principal place of business in Ada County, Idaho. The amount in controversy exceeds $5,000,000 for the Plaintiff and members of the Class collectively, exclusive of interest and costs, by virtue of the combined purchase prices paid by Plaintiff and members of the putative Class, and the profits reaped by Defendant from its transactions with Plaintiff and the Class, as a direct and proximate result of the wrongful conduct alleged herein, and by virtue of the injunctive and equitable relief sought.

12.    Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391 because a substantial portion of the underlying transactions and events complained of occurred and affected persons and entities located in this judicial district. Defendant has received substantial compensation for affected transactions and business activity in this judicial district and is domiciled in this District.

## PARTIES

13.    Plaintiff David Frankle is a resident of Oakland, California.

14.    Mr. Frankle purchased Defendant's Gummies on March 5, 2025, from Amazon.com and paid $33.06.

15.    Mr. Frankle made his purchase after reading and relying on Defendant's Product label, including the principal representation that it was and contained the claimed amount of Creatine Monohydrate.

16.    Mr. Frankle believed that Defendant lawfully marketed and sold the Product.

17.    Mr. Frankle relied on Defendant's labeling and was misled thereby.

18.    Mr. Frankle would not have purchased the Product, or would have purchased the Product on different terms, had he known the truth.

19.    Mr. Frankle was injured in fact and lost money as a result of Defendant's improper conduct.

20.    Plaintiff and members of the Class have been economically damaged by their purchases of the Products because the advertising for the Products was deceptive and/or misleading under California laws and the Products are misbranded and adulterated; therefore, the Products are worthless or at a minimum less than what Plaintiff and members of the Class paid for them and/or Plaintiff and members of the Class did not receive what they reasonably intended to receive.

21.    Defendant PerfectFit LLC is headquartered in Ada County Idaho. PerfectFit sells a variety of dietary supplements in addition to its Creatine Monohydrate gummies. The supplements are principally available for sale through www.amazon.com.[2]

## GENERAL ALLEGATIONS

### A.    Creatine Monohydrate

22.    Creatine is a compound derived from three amino acids. It is found naturally in the body's muscles as well as the brain. Creatine is generally obtained through the consumption of seafood and red meat as well as a small amount (i.e., 1 gram per day) produced by the liver, pancreas and kidneys.[3]  These levels, however, are far below those found in synthetically made creatine supplements.

---

[2] https://www.amazon.com/stores/PERFECTFIT365/page/11067C64-7BB2-41F0-B658-74139004CD0A (last visited June 18, 2025).

[3] Mayo Clinic, *Creatine*. Available at https://www.mayoclinic.org/drugs-supplements-creatine/art-20347591 (last visited June 19, 2025)

23.     Creatine supplies energy to muscles. Many people take creatine supplements to build strength and promote brain health.[4] Many athletes take creatine supplements to aid their workout routines and improve recoveries. In addition to its athletic benefits, creatine supplements have benefited people who suffer from neurodegenerative diseases, diabetes, osteoarthritis, fibromyalgia and a number of metabolic disorders. *Id.*

24.     Over 1,000 scientific studies have been conducted on the effects of creatine, making it one of the most studied dietary supplements on the market today.  [5] Creatine is sold in a number of forms. Among them, creatine monohydrate is widely considered to be the most efficacious. The fact that it is also the most affordable form of creatine makes it the most popular choice of creatine in the market. *Id.*

25.      The benefits of creatine are undeniable as reflected in its 1.11 billion dollar global market size.[6] While creatine is sold in powder, capsules and tablets, the gummy format has become increasingly popular. According to Nutrition Business Journal's Delivery Format Report 2022, gummies are now the single most popular supplement delivery format. [7] To appeal to as many customers as possible, companies such as the Defendant have launched gummy offerings as an

---

[4] Cleavland Clinic, *Creatine*. Available at https://my.clevelandclinic.org/health/treatments/17674-creatine (last visited June 18, 2025)

[5] Healthline, *5 Reasons Why Creatine Monohydrate Is the Best*, July 29, 2017 https://www.healthline.com/nutrition/creatine-monohydrate-is-best (last visited June 18, 2025)

[6] Grandview Research, *Creatine Supplements Market Size, Share & Trends Analysis Report By Form (Powder, Liquid, Capsules/Tablets), By Distribution Channel (Hypermarkets & Supermarkets, Pharmacy & Drug Stores, Online), By Region, And Segment Forecasts, 2025 – 2030*. Available at https://www.grandviewresearch.com/industry-analysis/creatine-supplements-market-report

[7] Supply Side Supplemental Journal, Gummy grand slam: Understanding the opportunities in chewable supplements, April 3, 2023. Available at https://www.supplysidesj.com/natural-product-development/gummy-grand-slam-understanding-the-opportunities-in-chewable-supplements-article (Last visited June 19, 2025)

alternative to the traditional powdered format.[8] Unfortunately, however, gummy formulations have unique challenges that make them harder to produce. "Since creatine gummies are often like other gummies, requiring moisture and heat to produce and having citric acid lowering the pH of the gummy, creatine can degrade faster than it would when just manufactured as a dry, unflavored powder." *Id.* Accordingly, manufacturers must be especially vigilant in the formulation of gummy supplements and stringent about complying with current Good manufacturing Practices in order to meet label claims and ensure consumers are getting what they paid for.

26.    Unfortunately, the formulation issue is not limited to Defendant but is pervasive in the industry. According to SuppCo, a supplement industry tracking and recommendation platform, and NOW, a supplement manufacturer, each of whom conducted independent studies, nearly half of the creatine monohydrate gummy supplements tested did not meet their label claims.

## B.    Legal Requirements for Accurate Dietary Supplement Labeling

27.    The Federal Food, Drug & Cosmetic Act ("FDCA") broadly regulates the sale of dietary supplements to the consuming public.  21 U.S.C §301.[9] It was promulgated in significant part to prevent consumer deception and was principally implemented through the creation of a uniform system of labeling on which consumers could rely to make informed purchasing decisions.

28.    Among its mandates, the principal display panel of a dietary supplement shall bear as one of its principal features a statement of the identity of the commodity. 21 C.F.R. §101.3 As a general matter, the statement of identity of a dietary supplement is the name specified by federal law

---

[8] Wired, *Those Creatine Gummies You Bought Online Might Not Contain Any Creatine*, June 18, 2025,  Available at https://www.wired.com/story/creatine-gummies-dubious-claims/?utm_campaign=aud-dev&utm_brand=wired&utm_social-type=owned&utm_source=linkedin&utm_medium=social (last visited June 19, 2025)

[9] In 1994 the FDCA was amended by the Dietary Supplement Health and Education Act of 1994 to bring dietary supplement under the broader purview of the FDCA. Among other things, it established a series of Good Manufacturing Practices to be employed by manufacturers of dietary supplements to ensure the products meet their label claims.

or regulation, or, if no such name is specified, its common or usual name.[10] Here the Product is falsely identified as Creatine Monohydrate.

29.     For every dietary supplement, the FDCA requires that the "list of dietary ingredients [] include the quantity of each such ingredient per serving[.]" 21 U.S.C. § 343(q)(5)(F)(ii). "A food with a label declaration of a vitamin . . . shall be deemed to be misbranded under section 403(a) of the FDCA unless it meets the following requirement . . . [w]hen a vitamin . . . meets the definition of a Class I nutrient, the nutrient content of the composite must be formulated to be at least equal to the value for that nutrient declared on the label." *Id*. §101.9(g)(4)(i).

30.     A dietary supplement is also considered adulterated when "…it has been prepared, packed, or held under conditions that do not meet current good manufacturing practice regulations [("cGMP")]." 21 U.S. Code § 342 (g)(1).  Here, among other things, cGMP requires that: that a dietary supplement consistently meet the established specifications for its identity, purity, strength, and composition, 21 C.F.R. §111.3 and that each batch is tested to verify specifications for identity, purity, strength, composition. 21 C.F.R. §111.75(c).

31.     Although its axiomatic – that a dietary supplement label must accurately reflect the identity of its ingredients and their respective amounts --  the FDA's Dietary Supplement Labeling Guide makes this abundantly clear.

> Must dietary ingredients that I have added to my products be present at 100% of the amount that I declare?
>
> For dietary ingredients that are specifically added, **your product must contain 100% of the volume or weight that you have declared on the label**, with the exception of a deviation that is attributable to the analytical method. **Products that contain less than this amount of such a dietary ingredient would be misbranded and in violation of the law**….

---

[10] U.S. Food & Drug Administration Dietary Supplement Labeling Guide: Chapter II. Identity Statement (2016)(" Dietary Supplement Labeling Guide"). Available at https://www.fda.gov/food/dietary-supplements-guidance-documents-regulatory-information/dietary-supplement-labeling-guide-chapter-ii-identity-statement. Last visited November 22, 2024.

21 CFR §101.9(g)(3) and (g)(4)(emphasis added).[11]

32.     While these fundamental violations of the FDCA serve to highlight the deceptive and misleading nature of Defendant's labeling, Plaintiff does not seek to prosecute or enforce any aspect of the FDCA. Rather, California has expressly adopted federal labeling requirements as its own pursuant to the Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 109875 et seq. (the "Sherman Law"). Moreover, Plaintiff's allegations that Defendant failed to properly label its Products independently give rise to his stated causes of action detailed below.

**C.     Plaintiff's Analytical Testing**

33.     Plaintiff conducted analytical testing of multiple samples of multiple lots of Defendant's Creatine Monohydrate Gummies.[12] Test results reveal that the Supplements did not contain detectable amounts of Creatine Monohydrate.[13] In other words they are a blatant fraud.

34.     By failing to properly label its Product, Defendant has misled and deceived consumers in violation of the laws pled herein.

35.     As a result of Defendant's unlawful and deceptive conduct, Plaintiff and members of the Class have been harmed.

---

[11] FDA, Dietary Supplement Labeling Guide Chapter IV. Nutrition Labeling, Available at https://www.fda.gov/food/dietary-supplements-guidance-documents-regulatory-information/dietary-supplement-labeling-guide-chapter-iv-nutrition-labeling. Last visited November 30, 2024

[12] The lot numbers tested (GMR20240828T and CM20241113T2 ) were identified and transmitted to Defendant in conjunction with a Demand letter pursuant to California Civil Code §1782 sent U.S. Certified Mail on or about April 22, 2025. Defendant failed to respond.

[13] Although not required to do so, Plaintiff conducted testing consistent with the FDA's protocol under   21 C.F.R. §101.9(g)(2). The specific lot numbers tested were transmitted to Defendant in the form of a demand pursuant to California Civil Code §1782 on or about October 15, 2024.

## NO ADEQUATE REMEDY AT LAW

36.     Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

37.     Broader Statutes of Limitations. The statutes of limitations for the causes of action pled herein vary. The limitations period is four years for claims brought under the UCL, which is one year longer than the statutes of limitations for damages claims under the CLRA.

38.     Broader Scope of Conduct. The scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. The UCL creates a cause of action for violations of other laws (*e.g.*, Sherman Law), which does not require, among other things, that a reasonable consumer would have been deceived in order to establish a violation. Thus, Plaintiff and Class members may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (*e.g.*, the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct).

39.     Injunctive Relief to Cease Misconduct and Dispel Misperception. Injunctive relief is appropriate on behalf of Plaintiff and members of the Class because Defendant continues to misrepresent the Products with the challenged representations. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm).

40.     Further, injunctive relief, in the form of affirmative disclosures are necessary to dispel the public misperception about the Product that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts. Such disclosures include, but are not limited to, publicly disseminated statements that the Product's challenged representations are not true and provide

accurate information about the Product's true nature; and/or requiring prominent qualifications and/or disclaimers on the Product's front label concerning the Product's true nature.

41.     An injunction requiring affirmative disclosures to dispel the public's misperception and prevent the ongoing deception and repeat purchases based thereon, is also not available through a legal remedy (such as monetary damages).

42.     Procedural Posture—Incomplete Discovery & Pre-Certification. Lastly, this is an initial pleading in this action and discovery has not yet commenced. No class has been certified. No expert discovery has commenced. The completion of fact and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiff's individual claims and any certified class. Plaintiff therefore reserves her right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for Plaintiff and/or any certified class. Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.


## ECONOMIC INJURY

43.     Plaintiff sought to buy Products that were lawfully labeled, marketed, and sold.

44.     Plaintiff saw and relied on Defendant's misleading labeling of its Products.

45.     PerfectFit guaranteed, and Plaintiff believed that the purchased Products contained Creatine Monohydrate, and in the amounts promised on the label.

46.     Plaintiff believed that the Products were lawfully marketed and sold.

47.     In reliance on the claims made by Defendant regarding the qualities of their Products, Plaintiff paid a price premium.

48.     As a result of their reliance on Defendant's misrepresentations, Plaintiff received Products that did not contain the promised ingredient, or at a minimum, not in the specified amounts.

49.     Plaintiff received Products that were unlawfully marketed and sold.

50.     Plaintiff lost money and thereby suffered injury as he would not have purchased this Products and/or paid as much for it absent the misrepresentation.

51.     Defendant knows that the statement of identity of a product is material to a consumer's purchasing decision.

52.     Plaintiff altered his position to his detriment and suffered damages in an amount equal to the amounts he paid for the Product he purchased, and/or in additional amounts attributable to the deception.

53.     By engaging in the false and deceptive conduct alleged herein, Defendant reaped and continues to reap financial benefits in the form of sales and profits from its Products.

54.     Plaintiff, however, would be willing to purchase Defendant's Creatine Monohydrate Products again in the future should he be able to rely with any confidence on Defendant's marketing as truthful and not deceptive.

55.     Without an injunction, however, Plaintiff will not be able to purchase Defendant's Product in the future, even though Plaintiff would like to, since simply viewing the ingredient list on Defendant's Product will not afford Plaintiff the opportunity to determine the actual contents of the Product.

## CLASS ACTION ALLEGATIONS

56.     Plaintiff brings this action on behalf of himself and on behalf of classes of all others similarly situated consumers defined as follows:

    a. **California:** All persons in California who purchased the Product in California during the Class Period; [14]

    b. **Nationwide:** All persons nationwide who purchased the Class Products anywhere in the United States during the Class Period;

    c. **Class Period** is the maximum time allowable as determined by the statute of limitation periods accompanying each cause of action.

57.    Plaintiff brings this class action pursuant to Federal Rule of Civil Procedure 23(a), and 23(b)(1), 23(b)(2), 23(b)(3) and 23(c)(4).

58.    Excluded from the Classes are: (i) Defendant and its employees, principals, affiliated entities, legal representatives, successors and assigns; and (ii) the judges to whom this action is assigned.

59.    Upon information and belief, there are tens of thousands of members of the Class. Therefore, individual joinder of all members of the Class would be impracticable.

60.    There is a well-defined community of interest in the questions of law and fact affecting the parties represented in this action.

61.    Common questions of law or fact exist as to all members of the Class. These questions predominate over the questions affecting only individual Class members. These common legal or factual questions include but are not limited to:

    a. Whether Defendant marketed, packaged, or sold the Class Products to Plaintiff and those similarly situated using false, misleading, or deceptive statements or representations;

    b. Whether Defendant omitted or misrepresented material facts in connection with the sales of their Products;

    c. Whether Defendant participated in and pursued the common course of conduct complained of herein;

    d. Whether Defendant has been unjustly enriched as a result of their unlawful business practices;

    e. Whether Defendant's actions violate the Unfair Competition Law, Cal.

---

[14] Collectively referred to as "Class or Classes."

Bus. & Prof. Code §§17200, et seq. (the "UCL");

f.  Whether Defendant's actions violate the False Advertising Law, Cal. Bus. & Prof. Code §§17500, et seq. (the "FAL");

g.  Whether Defendant's actions violate the Consumers Legal Remedies Act, Cal. Civ. Code §§1750, et seq. (the "CLRA");

h.  Whether Defendant's actions constitute breach of express warranty;

i.  Whether Defendant should be enjoined from continuing the above-described practices;

j.  Whether Plaintiff and members of the Class are entitled to declaratory relief; and

k.  Whether Defendant should be required to make restitution, disgorge profits, reimburse losses, and pay damages as a result of the above-described practices.

62.   Plaintiff's claims are typical of the claims of the Class, in that Plaintiff is a consumer who purchased Defendant's Product. Plaintiff is no different in any relevant respect from any other Class member who purchased the Product, and the relief sought is common to the Class.

63.   Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the members of the Class he seeks to represent, and he has retained counsel competent and experienced in conducting complex class action litigation. Plaintiff and his counsel will adequately protect the interests of the Class.

64.   A class action is superior to other available means for the fair and efficient adjudication of this dispute. The damages suffered by each individual Class member will likely be relatively small, especially given the cost of the Products at issue and the burden and expense of individual prosecution of complex litigation necessitated by Defendant's conduct. Thus, it would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Moreover, even if members of the Class could afford individual actions, it would still not be preferable to class-wide litigation. Individualized actions present the potential for inconsistent or contradictory judgments. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

65.    In the alternative, the Class may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate preliminary and final equitable relief with respect to each Class.

66.    The requirements for maintaining a class action pursuant to Rule 23(b)(2) are also met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Breach of Express Warranty Cal. Com. Code §2313**

67.    Plaintiff incorporates each and every allegation contained in the paragraphs above as if rewritten herein.

68.    Defendant made express warranties to Plaintiff and members of the Class that the Product they purchased was Creatine Monohydrate and present in a certain amount.

69.    The express warranties made to Plaintiff and members of the Class appear on every Product label. This warranty regarding the nature of the Product and promised ingredients contained therein marketed by Defendant specifically relates to the goods being purchased and became the basis of the bargain.

70.    Plaintiff and Class members purchased the Products in the belief that they conformed to the express warranties that were made on the Products' labels.

71.    Defendant breached the express warranties made to Plaintiff and members of the Class by failing to supply goods that conformed to the warranties it made. As a result, Plaintiff and members of the Class suffered injury and deserve to be compensated for the damages they suffered.

72.    Plaintiff and the members of the Class paid money for the Products. However, Plaintiff and the members of the Class did not obtain any value, or at a minimum did not obtain the

full value of the advertised Products. If Plaintiff and other members of the Class had known of the true nature of the Products, they would not have purchased them or paid less for them. Accordingly, Plaintiff and members of the Class have suffered injury in fact and lost money or property as a result of Defendant's wrongful conduct.

73.    Plaintiff and Class members are therefore entitled to recover damages, punitive damages, equitable relief such as restitution and disgorgement of profits, and declaratory and injunctive relief.

**SECOND CAUSE OF ACTION**

**Unlawful Business Practices**
**Violation of The Unfair Competition Law ("UCL")**
**Bus. & Prof. Code §§17200, _et seq._**

74.    Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

75.    The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code §17200.

76.    A business act or practice is "unlawful" if it violates any established state or federal law.

77.    Defendant's acts, omissions, misrepresentations, practices, and/or non-disclosures concerning the Products alleged herein, constitute "unlawful" business acts and practices in that they violate the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§301, et seq. and its implementing regulations, including, at least, the following sections:

   a.    21 U.S.C. §343(a), which deems food misbranded when its labeling contains a statement that is false or misleading in any particular;

   b.    21 C.F.R. §102.5(a)-(d), which prohibits the naming of foods so as to create an erroneous impression about the presence or absence of ingredient(s) or component(s) therein;

   c.    21 U.S.C. §§331and 333, which prohibits the introduction of misbranded foods into interstate commerce.

d.  21 U.S.C. §342(g)(1) which deems a dietary supplement adulterated if it has been prepared, packed, or held under conditions that do not meet current good manufacturing practice regulations.

78.    California has expressly adopted federal labeling requirements as its own pursuant to the Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 109875 et seq. (the "Sherman Law"), the Sherman Law, which provides that "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food regulations of this state." Cal. Health & Safety Code § 110100.

79.    Each of Defendant's violations of federal law and regulations violates California's Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 109875 et seq. ("Sherman Law"), including, but not limited to, the following sections:

80.    Section 110100 (adopting all FDA regulations as state regulations);

81.    Section 110290 ("In determining whether the labeling or advertisement of a food . . . is misleading, all representations made or suggested by statement, word, design, device, sound, or any combination of these, shall be taken into account.");

82.    Section 110390 ("It is unlawful for any person to disseminate any false advertisement of any food. . . .  An advertisement is false if it is false or misleading in any particular.");

83.    Section 110395 ("It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food . . . that is falsely advertised.");

84.    Section 110398 ("It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded.");

85.    Section 110400 ("It is unlawful for any person to receive in commerce any food . . . that is falsely advertised or to deliver or proffer for delivery any such food . . . ."); and

86.    Section 110660 ("Any food is misbranded if its labeling is false or misleading in any particular.").

87.    Each of the challenged omissions, statements, and actions by Defendant violates the FDCA, and the Sherman Law, and, consequently, violates the "unlawful" prong of the UCL.

88.    Defendant's conduct is further "unlawful" because it violates California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 et seq. (the "FAL"), California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750 et seq. (the "CLRA"), and breaches express warranty, as discussed in the claims above and below.

89.    By committing the unlawful acts and practices alleged above, Defendant has engaged, and continues to be engaged, in unlawful business practices within the meaning of California Business and Professions Code §§17200, *et seq.*

90.    In accordance with California Business & Professions Code Section 17203, and as Plaintiff lacks an adequate remedy at law, they seek an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

91.    Through its unlawful acts and practices, Defendant has obtained, and continues to unfairly obtain, money from members of the Class. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and all members of the Class, to disgorge the profits Defendants made on these transactions, and to enjoin Defendants from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an order is not granted.

## THIRD CAUSE OF ACTION

**Unfair Business Practices**
**Violation of The Unfair Competition Law**
**Bus. & Prof. Code §§ 17200, *et seq.***

92.    Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

93.    The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code §17200.

94.     A business act or practice is "unfair" under the Unfair Competition Law if the reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

95.     Defendant has violated, and continues to violate, the "unfair" prong of the UCL through its misleading description of the Products. The gravity of the harm to members of the Class resulting from such unfair acts and practices outweighs any conceivable reasons, justifications, or motives of Defendant for engaging in such deceptive acts and practices. By committing the acts and practices alleged above, Defendant engaged, and continued to engage, in unfair business practices within the meaning of California Business and Professions Code §17200, *et seq.*

96.     In accordance with California Business & Professions Code Section 17203, and as Plaintiff lacks an adequate remedy at law, they seek an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

97.     Through its unfair acts and practices, Defendant obtained, and continue to unfairly obtain, money from members of the Class. As such, Plaintiff has been injured and requests that this Court cause Defendants to restore this money to Plaintiff and the members of the Class, to disgorge the profits Defendant made on their Products, and to enjoin Defendants from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

1

2

**FOURTH CAUSE OF ACTION**

3

**Fraudulent Business Practices**
**Violation of The Unfair Competition Law**
**Bus. & Prof. Code §§ 17200, *et seq*.**

4

5

98.    Plaintiff incorporates each and every allegation contained in the paragraphs above as

6

if restated herein.

7

8

99.    The UCL defines unfair business competition to include any "unlawful, unfair or

9

fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal.

10

Bus. & Prof. Code §17200.

11

100.    A business act or practice is "fraudulent" under the Unfair Competition Law if it

12

actually deceives or is likely to deceive members of the consuming public.

13

101.    Defendant's acts and practices of mislabeling its Products in a manner to suggest they

14

contain ingredients in promised amounts which they do not contain.

15

16

102.    As a result of the conduct described above, Defendant has been, and will continue to

17

be, unjustly enriched at the expense of Plaintiff and members of the proposed Class. Specifically,

18

Defendant has been unjustly enriched by the profits it has obtained from Plaintiff and the Class from

19

the purchases of its Products.

20

103.    In accordance with California Business & Professions Code Section 17203, and as

21

Plaintiff lacks an adequate remedy at law, they seek an order enjoining Defendant from continuing to

22

conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a

23

corrective advertising campaign.

24

104.    Through its fraudulent acts and practices, Defendant has improperly obtained, and

25

continues to improperly obtain, money from members of the Class. As such, Plaintiff requests that

26

this Court cause Defendant to restore this money to Plaintiff and the Class, to disgorge the profits

27

Defendant has made, and to enjoin Defendant from continuing to violate the Unfair Competition

28

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF

1 | Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed

2 | and denied an effective and complete remedy if such an Order is not granted.

### FIFTH CAUSE OF ACTION

**False Advertising**
**Violation of California Business & Professions Code §§ 17500, *et seq.***

105.     Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

106.     Defendant uses advertising and packaging to sell its Products. Defendant disseminates advertising regarding its Products which by their very nature are deceptive, untrue, or misleading within the meaning of California Business & Professions Code §§17500, *et seq.* because those advertising statements contained on the labels are misleading and likely to deceive, and continue to deceive, members of the putative Class and the general public.

107.     In making and disseminating the statements alleged herein, Defendant knew or should have known that the statements were untrue or misleading, and acted in violation of California Business & Professions Code §§17500, *et seq.*

108.     The misrepresentations and non-disclosures by Defendant of the material facts detailed above constitute false and misleading advertising and therefore constitute a violation of California Business & Professions Code §§17500, *et seq.*

109.     Through its deceptive acts and practices, Defendant has improperly and illegally obtained money from Plaintiff and the members of the Class. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and the members of the Class, and to enjoin Defendant from continuing to violate California Business & Professions Code §§17500, *et seq.*, as discussed above. Otherwise, Plaintiff and those similarly situated will continue to be harmed by Defendant's false and/or misleading advertising.

110.     Pursuant to California Business & Professions Code §17535, Plaintiff seeks an Order of this Court ordering Defendant to fully disclose the true nature of its misrepresentations. Plaintiff

additionally requests an Order: (1) requiring Defendant to disgorge its ill-gotten gains, (2) award full restitution of all monies wrongfully acquired by Defendant, and (3) interest and attorneys' fees. Plaintiff and the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

**SIXTH CAUSE OF ACTION**

**Violation of the Consumers Legal Remedies Act**
**California Civil Code §§ 1750, *et seq*.**
**(On behalf of the California Class)**

111.    Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

112.    This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §§1750, *et seq*. (the "CLRA").

113.    Plaintiff and each member of the proposed Class are "consumers" within the meaning of Civil Code §1761(d).

114.    The purchases of the Products by consumers constitute "transactions" within the meaning of Civil Code §1761(e) and the Products constitute "goods" within the meaning of Civil Code §1761(a).

115.    Defendant has violated, and continues to violate, the CLRA in at least the following respects:

    a.   §1770(5) pertaining to misrepresentations regarding the characteristics of goods sold—specifying that misleading representations regarding ingredients violate the CLRA;

    b.   §1770(7) pertaining to misrepresentations regarding the standard, quality, or grade of goods sold; and

    c.   § 1770(9) pertaining to goods advertised with the intent not to provide what is advertised.

116.    Defendant knew, or should have known, that the labeling of its Products violated consumer protection laws, and that these statements would be relied upon by Plaintiff and the members of the Class.

117.    The representations were made to Plaintiff and all members of the Class. Plaintiff relied on the accuracy of the representations on Defendant's labels which formed a material basis for their respective decisions to purchase the Products. Moreover, based on the very materiality of Defendant's misrepresentations uniformly made on or omitted from their Product labels, reliance may be presumed or inferred for all members of the Class.

118.    Defendant carried out the scheme set forth in this Complaint willfully, wantonly, and with reckless disregard for the interests of Plaintiff and the Class, and as a result, Plaintiff and the Class have suffered an ascertainable loss of money or property.

119.    Plaintiff and the members of the Class request that this Court enjoin Defendant from continuing to engage in the unlawful and deceptive methods, acts and practices alleged above, pursuant to California Civil Code §1780(a)(2). Unless Defendant is permanently enjoined from continuing to engage in such violations of the CLRA, future consumers of Defendant's Products will be damaged by their acts and practices in the same way as have Plaintiff and the members of the proposed Class.

120.    On April 22, 2025, Plaintiff served and Defendant received a CLRA demand pursuant to Civil Code §1782, notifying Defendant of the conduct described herein and that such conduct was in violation of particular provisions of Civil Code §1770.  More than 30 days have passed since receipt of the Demand without Defendant providing a proper remedy. Accordingly, Plaintiff seeks the full measure of damages pursuant to Civil Code § 1780(a).

**SEVENTH CAUSE OF ACTION**

**Restitution Based On Quasi-Contract/Unjust Enrichment**

121.    Plaintiff incorporates each and every allegation contained in the paragraphs above as if rewritten herein.

122.    Plaintiff pleads this cause of action in the alternative.

123.    Defendant's conduct in enticing Plaintiff and the Class to purchase its Products with false and misleading packaging is unlawful because the statements contained on the Defendant's Product labels are untrue.

124.    Defendant took monies from Plaintiff and the Class for these Products and have been unjustly enriched at the expense of Plaintiff and the Class as a result of their unlawful conduct alleged herein, thereby creating a quasi-contractual obligation on Defendant to restore these ill-gotten gains to Plaintiff and the Class.  It is against equity and good conscience to permit Defendant to retain the ill-gotten benefits received from Plaintiff and Class members.

125.    As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and the Class are entitled to restitution or restitutionary disgorgement in an amount to be proved at trial.

**PRAYER FOR RELIEF**

THEREFORE, Plaintiff, on behalf of himself and on behalf of the other members of the Class and for the Counts so applicable on behalf of the general public request an award and relief as follows:

A.    An order certifying that this action is properly brought and may be maintained as a class action, that Plaintiff be appointed Class Representative, and Plaintiff's counsel be appointed Lead Counsel for the Class.

B.    Restitution in such amount that Plaintiff and all members of the Class paid to purchase Defendant's Product or restitutionary disgorgement of the profits Defendant obtained from those transactions, for Causes of Action for which they are available.

C.   Compensatory damages for Causes of Action for which they are available.

D.   Statutory penalties for Causes of Action for which they are available.

E.   Punitive Damages for Causes of Action for which they are available.

F.   A declaration and Order enjoining Defendant from marketing and labeling its Products deceptively, in violation of laws and regulations as specified in this Complaint.

G.   An Order awarding Plaintiff her costs of suit, including reasonable attorneys' fees and pre and post judgment interest.

H.   An Order requiring an accounting for, and imposition of, a constructive trust upon all monies received by Defendant as a result of the unfair, misleading, fraudulent and unlawful conduct alleged herein.

I.   Such other and further relief as may be deemed necessary or appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all causes of action or issues so triable.

DATED: June 24, 2025                    Respectfully submitted,


Michael D. Braun
**KUZYK LAW, LLP**
2121 Avenue of the Stars, Ste. 800
Los Angeles, California 90067
Telephone: (213) 401-4100
Email: mdb@kuzykclassactions.com

*Counsel for Plaintiff*